Good morning, your honor. May it please the court, my name is Ken Williams. I represent the appellants in this matter and if possible I'd like to try to reserve three minutes for rebuttal. The appellants are challenging a record of decision taking over 200 acres of private land into trust in Plymouth, California for a band of Indians that have never been recognized by Part 83. We're challenging it under the Indian Reorganization Act and our appeal focuses on two violations. The lack of authority for Mr. Labrador, who was never appointed by the president, never confirmed by the Senate, to take land into trust. Section 5 of the IRA says that that authority must be exercised by the Secretary and even that for a while there was a disagreement among the circuits whether even the Secretary had that authority, but now it seems that the circuits are agreed and I don't think the circuit has yet. I'm sorry, can I take you in a different direction because I'm actually concerned about whether your organization has associational standing and has established adequately that it has members that will be injured, so I'd like to ask about that. Yes, your honor. Could you tell me whether there's any evidence in the record naming specific members of your organization who even lived to show that they lived in the county at the time that the complaint was filed? Yes, your honor. Those were all, those documents were all part of the administrative record and if you look at basically the second half of the supplemental excerpts of the record. So I've looked at all of the letters that I could find from people in your organization to government officials and it seemed like the last one I could find ended in 2010 and I think the complaint was filed in 2012. So if you could point me to something that shows an individual claiming an injury at the time that the complaint was filed it would be really helpful. If I could bring that up at the rebuttal, I'll be glad to do that, your honor. I think the reason in 2010 is that the matter, the application process ended then and the decision process was sort of unexpected. But in order to file a complaint in federal court, an association has to show that it has a member, at least one member that they named specifically, who shows an injury and specifically claims what that injury is going to be and I just couldn't find that you had gone through the steps that the courts have required of organizations bringing claims on behalf of their members. Well, I think that if you look at the cases we cited, the Pacha case and the preservation of Los Olivos case, which just involves community groups and what the Lujan case requires is declarations and support of the community groups. I didn't see any declarations, do you have any? Right, but so as I said in my brief, the Lujan case was a challenge to a regulation that would apply to third parties and the Supreme Court said in some circumstances you need a declaration, but in other circumstances and the way that the court describes it, you need a declaration or evidence. Yes, I did a sort of follow-up, if I may, with a version of Judge Friedland's question because I also didn't see any materials from individuals after 2010, but I guess accepting your point that that's part of other evidence, the administrative record, do our cases permit the drawing of a factual inference that when the administrative record shows a sort of continuing interest of individuals from I forget the year now, like 2003 to 2010, do our cases allow the drawing of an lie if it's done with a complaint where the nature of them is home ownership and business ownership, or do they require something more precise? I think they do, the rules do require, because if you look at, do allow, I don't think they don't require, but they do allow because if you look at the administrative rules that created the record that we're dealing with, is that my clients had to exhaust those remedies. The code says that we cannot sue unless we participate. Right, that goes to the question whether that's an acceptable form of evidence. For purposes of this question, at least, I don't disagree with you that that's an acceptable form of evidence, but that evidence sort of stops a period of time before the filing of the complaint. Oh, I see, I see the point you're making. So, if someone says in 2010, I'm a neighboring homeowner, I'm a neighboring business owner, and I allege that taking this land and building a casino will injure me, that supports standing, but it supports it in 2010, so can we draw a factual inference that that homeowner, that business owner, continued to live there, until 2012? I think that, yes, and here's why, I think that is sufficient for us to create a presumption that these people that did participate up through 2010 are injured. But what case are you pointing to? I mean, the Supreme Court has talked about people needing to file declarations with plain tickets saying, I have a plan to go to this place again. I mean, how do we know that Ms. Malik still lives in this town? Didn't move away? Didn't move to a nursing home? I mean, we have no information after 2010 about any of the individuals who we can identify in this record, as far as I can tell. Well, the... Can you point to a case that says that something's different about homeownership than habits of hiking, or some other thing that the Supreme Court has said isn't enough unless you have specific declarations about future plans? Well, the two cases I rely on in our brief is the Preservation of Los Olivos case, which it is a district court case down in Southern California. That one probably doesn't help us. Do you have any circuit or Supreme Court authority? Well, the Supreme Court case I rely on is the Patchak case, which talks about standing in an administrative procedure, APA kind of case, for citizens groups. And citizens in the Supreme Court says that the standing in the APA situation is not intended to be especially onerous when you're dealing with interested parties. So, I think we've established enough and we've alleged enough in our complaint to establish an interest to establish standing. Now, if there were some... and the district court in our case agreed. I mean, Judge... And so, can you articulate what have your members said their injury is, and where can I find it, and how have they described it as a future injury? I don't have those sites right here, but their injuries are that they live in the city of Plymouth, and they will be adversely affected by the environmental impacts caused by a casino. And that is all evidence in the NEPA comments that they made that showed the adverse environmental impacts to them personally, to the community, and as a public interest group. So, that is their interest in this case, and the reason that they exhausted their administrative remedies in front of the agencies, and commented on the extensive comments on the environmental impact report. There's a couple of letters in the supplemental environmental record which outline... and I don't have those sites, but I'll get them for you. I'm confused a bit about why... it was argued in the district court that you hadn't adequately established standing, so why didn't you put in some declarations? I don't recall that that was a... At that time, I made the same arguments I'm making here, basically, and Judge Nunley accepted that argument, and said that we do have standing. And so, in hindsight, I guess as a precaution, I could... The other aspect of it is that this whole hearing was scheduled in front of Judge Nunley on an accelerated time frame. We had cross motions. We brought a motion on the first claim. They brought a motion, counter motion, but then sort of outside what the district court anticipated, they brought a counter motion on all these other claims. And there was not a lot of time between that and the hearing for us to submit a lot of additional documents. So, there was a timing issue. The judge Nunley accepted my argument at the time. If he had not accepted my argument, my expectation is I would have asked for a motion for reconsideration and filed the declarations if that's what he said I needed to do. But he didn't say that. He said we had standing. It based on the arguments that I raised. So, I know that that's probably a very important issue from the court's point of view, but I think the... And from my point of view, I think the other very important issue here is that, regardless, Mr. Labrador did not have the authority to take the land into trust. And the other important point here is that the Ion Band is not a federally recognized tribe under Part 83. And Judge Carlton decided that 25 years ago, urged them to go seek Part 83 recognition. And then they didn't do it and said they came back and redid what they had tried to do before, which was to somehow get administrative recognition. Which, from Interior's point of view, they had and did get, correct? They had, but they hadn't gone through the Part 83 recognition. Now, another point, which even in the case cited by the government, most recent case, the Confederated Tribes of the Grand Ronde County, they went through the Part 83 recognition. And the circuit, when they went through that point, acknowledged that they had to make a showing that they were a government since 1900. And so that is how you, that's how you qualify. The other point that I wanted to make is, even if Mr. Labrador was, even if the manual that I asked for judicial notice is not applicable, and even if Mr. Labrador was a successor, if you look at 3348 of the code, it says that he can only do those duties that were exclusively the responsibility of the Assistant Secretary. And there's no statute at all, no regulation at all, that allows the Assistant Secretary to take lands into trust. It's exclusively the province of the Secretary. So in my way of thinking, and I think it's a matter of law, that record of decision is void. If there are no further questions. You may preserve your remaining time if you'd like. Thank you, thank you. Thank you. May it please the court, John Smeltzer for the Department of the Interior. I'm going to be sharing time with the tribe's attorney, Mr. Evans. Yes, you are. It should be shown separately as ten minutes for you and five minutes for them so that you don't stick on each other's toes. Okay, wait a second. Ms. Cates gets it squarely. Thank you, Your Honor. We submit that the Department of the Interior acted reasonably within its authority and consistent with all relevant statutes with taking land into trust for the Ione Band. But Your Honor's raised the issue of standing. Do you have that well? Well, let me ask you the same question I asked earlier. The basis for standing is that the members of this organization are homeowners and business owners in the community, and they have demonstrated that over a period of a number of years through the administrative record. Is it permissible to draw a factual inference that one or more of them still live there or own businesses there when there's a gap between the last demonstration of personal injury and the filing of a complaint? Thank you, Judge Graber. I think that would not be a good practice because in the administrative process there is no obligation to prove standing. Whether it's a good practice seems not relevant to me, honestly, because the question is whether that's a legally permissible method of demonstrating standing, whether it's good or bad practice is another issue. I'm sorry if I phrased it badly. It's not permissible, Your Honor. Because why? Because the administrative record clearly has letter after letter saying, I'm a neighboring business owner, I'm a neighboring homeowner, and this will injure me. Those are clearly interests protected by standing. So the question is whether the fact that there's a gap between this long administrative process where they repeat that many times and the filing of the complaint, is that fatal to standing? I would say yes, Your Honor, because in the administrative process those facts aren't disputed facts because you don't need to be a homeowner to raise that. So it's not a declaration. It's not evidence? You're saying it's not evidence? It's not evidence that is required to clear any hurdle. And what we're talking about is just clearing a very low hurdle to provide evidence in specific form, either an affidavit or declaration, before the district court. So wait, because I want to be sure I understand your position. So it's your position that even if the last of these letters saying, I'm a neighboring homeowner, I'm a neighboring business owner, this will harm me, if it happened on the very day that the complaint was filed, that would be insufficient evidence of standing, in your view, because it wasn't in the form of a declaration? Well, I think evidentiary formalities matter in district courts. So is that a yes? You're saying that that would be insufficient evidence of standing, even if that letter had happened on the very day the complaint was filed? If it's a disputed fact, Your Honor. Disputed by what? If the United States had stipulated that that was true. Well, I noticed your briefing was very careful not to say that they actually lacked standing, but only that they didn't prove it. So I guess it matters to me to know whether your position is that the fact that it's not in the form of under oath means that it cannot support standing. It would not have to be under oath if the United States had agreed and stipulated in a statement of undisputed fact. No, it didn't. So yes, it needs to be. Okay. It's a long time to get to your answer. I guess following up on that, the administrative record is all about, not all about, but largely about the objections of these folks, the business community and the neighbors and so on. So, yeah, there's a gap, but the proceeding in the district court is judicial review of that administrative proceeding, or at least the record of decision that emanated from that. So why do we have to go through this dance? I mean, why is there any real doubt that you have interested parties? Your Honor, it's not a difficult hurdle to put in and have it in the district court. It's a formality that matters in case it's a disputed issue that can then be raised. I mean, is the concern that maybe these people are really owners of some other casino who are claiming to be members because they never put it under oath? I mean, is that what you're getting at? It could be any number of things. They can no longer live there, as the court has noted. They could live far away. They might not have a particular interest. I don't want to get bogged down in this. If the court believes that the administrative record is sufficient for that kind of factual inference. Were any of the – so I was trying to figure out if part of your argument was that it needs to be admissible evidence in the sense that it can't be hearsay. I mean, is your positioning these letters are hearsay? Or I'm trying to figure out what the difference is between a letter and an administrative record, which I guess, as I understand it, doesn't have to be sworn or anything and a declaration or affidavit. I think the point we were making was that the evidence needed to be presented per the authority of the Supreme Court in a form that's admissible evidence in the district court. And that's it. We didn't stipulate to these facts, and they weren't submitted in a form of admissible evidence. And they were submitted from a forum where you don't have to prove standing in order to participate. But you can't prove standing. You have to show that there's an interest. Right, but nobody would scrutinize that in that proceeding because it's not relevant in that proceeding. What's relevant in that proceeding are the other issues that I'd like to talk about. Can I ask you just to respond to counsel's argument on the delegation? Yes. In a few 50 sentences, what's wrong with his argument? What's wrong with the argument is that he conflates in the briefing two issues, delegation and the appointments clause. The delegation is clear, and we've pointed it out to the court, that statute doesn't say exclusives solely can be made by the secretary. The statute gives the authority to the secretary. And then there are any number of statutes that give. And we cited them in the brief 25 U.S.C. Section 1A and then the Reorganization Act of 1950, number 3, which is an approved reorganization under the Reorganization Statute, which is 5 U.S.C. Section 903. Under those statutes, the secretary has the authority to delegate any or all of her functions to subordinate officers. In the Department's Manual, Part 209, Chapter 8, I believe, the secretary did delegate all functions to the Assistant Secretary for Indian Affairs, who stands in the same shoes as the Commissioner for Indian Affairs used to stand in. It's the highest officer of the United States with respect to issues of Indian affairs. So that's the delegation part of it. And, of course, there's also the Federal Vacancies Reform Act, which says that when a person resigns, that the acting or the first assistant shall undertake those duties. And Mr. Labrador was undisputably the deputy and the first assistant. It stepped in, and he didn't act beyond the time frame that the statute provides for acting. And what the no casino groups are saying is that, well, you can't take those statutes, the plain language of the statutes, into account because of the Appointments Clause. But what the no casino groups miss is the Appointments Clause has two parts. It gives the appointment of principal officers in the first part of the Appointments Clause. But then the second part of the Appointments Clause talks about the appointment of inferior officers and says Congress may by law vest the appointment of inferior officers in the president alone, in the courts of law, or in the heads of departments. In Buckley v. Vallejo, the Supreme Court held that any appointee exercising significant authority pursuant to the laws of the United States is an officer and that all officers are to be appointed according to the clause. Mr. Labrador was an inferior officer. He was exercising significant authority as an inferior officer pursuant to the Appointments Clause. The problem there, they conflate the issues and talk about delegation between principal officers and inferior officers. None of the cases they cite are in that context. All of the cases they cite are about somebody who's not an officer, neither a principal officer or an inferior officer taking on significant authority. It's in that context where the courts have looked at, well, is it significant authority? And if it is, then it's a violation of the Appointments Clause. Or one of the cases they cite was the Freitag case out of the Supreme Court where they talked about Article I courts. And they decided, yes, this person was acting, this special judge was acting with significant authority, but was under the second part of the Appointments Clause because the Article I court counted it as a court of law for purposes of the Appointments Clause. So no Appointments Clause issue, no delegation issue. So that's why the Assistant Secretary could act. I see I'm almost out of time. Just on the last point with respect to recognition, the recognition decision itself is not being challenged. In 1994, the decision and the fact that the tribe has been a recognized tribe and listed as a recognized tribe since 1994 is not being challenged here. And we would urge the court to follow the D.C. Circuit's decision and confederate a tribe with a grander on in terms of interpreting the Indian Reorganization Act. And with that, I will turn it over to Mr. Evans. Thank you. May it please the Court. My name is Timothy Evans, and I represent the Appellee Iown Band of Miwok Indians. Council 4 appellate has indicated that the tribe did not, is not, and did not pursue recognition, and that is simply not the case. It also indicated that the reason it was not is because the tribe did not pursue federal acknowledgement or recognition through the Part 83 process. That was not necessary, was not necessary, and is not necessary for the tribe to be a recognized tribe. Prior to the promulgation of the Part 83, excuse me, 25 CFR Part 83 acknowledgement regulations, recognition determinations were made on an ad hoc basis. There was no specific criteria set out to do that. That was to be done by the Commission of Indian Affairs with the support of other Bureau of Indian Affairs officials in determining the Indian descent of groups of Indians. And therefore, in 1972, Commissioner Lewis Bruce administratively recognized the Iown Band of Miwok Indians, the innovator in this case, by indicating that evidently recognition had already been extended to this tribe back in the early 1900s through attempted purchases of land for that. And he also directed that the Bureau of Indian Affairs undertake specific actions according to the Indian Reorganization Act as informed as an extension of this recognition, namely to take a 40-acre parcel of land into trust for this tribe, and also that the area agency assist in the formation of governing documents and membership roles. So there was a recognition of this tribe in 1972, administrative recognition. Soon thereafter, people, lower people, I might add, lower officials, and people in the Solicitor's Office within the Bureau of Indian Affairs, without authority to overturn the decision of Commissioner Lewis Bruce, took the position that the Iown was not recognized. That was actually started soon after Commissioner Bruce's position in 1972. It started in the Solicitor's Office approximately in 1973, but even then, in 1974-75, there's a memorandum from then-Commissioner Morris Thompson indicating that Iown Band was indeed recognized, that there was no need for them to continue submitting requests to be recognized or to submit information for that fact, and that, again, directing the Bureau to take action. For whatever reason, there were people within the Department of Interior and the Bureau of Indian Affairs who simply did not want to follow the position of the leading official on Indian Affairs in the United States as the commissioner at the time. So soon after that, the Part 83 regulations were promulgated in 1978. Again, the Department took the position, the lower level of the Department, people took the position that Iown was not a recognized tribe, and therefore they would have to go through the Part 83 process. The litigation that Counsel for the Appellant is referring to, known as the Burrs litigation, was actually brought by, and this is a little confusing, the facts are sort of very important here, the litigation was brought by the current intervening Iown Band, who at the time the Department was taking the position was not federally recognized. The complaint was brought in Eastern District to compel recognition, to compel the acceptance of the 40 acres of trust land for the benefit of this tribe. And so the United States was named as a plaintiff, excuse me, a defendant in that case, along with some individual members of the tribe who, there was a faction dispute going on at this time, and so the United States took the position at that time that the court actually in that case did not have subject matter jurisdiction, not because it was not ruling on the recognition issue at all. What the United States position was taking was that the court did not have subject matter jurisdiction because the Band had not gone through the Part 83 process to exhaust administrative remedies, and that's what the 1992 Carlton Award was about. It did not say that the Iown Band had to go through Part 83. What it said was that the court had subject matter jurisdiction because there was a failure to exhaust administrative remedies, and therefore the tribe can go back, and by whatever means, if you take the appellant's position then the U.S. is always going to be locked into only certain positions to recognize tribes. Most importantly, Iown was already recognized, and in 1994, once again, the highest-ranking official in the Bureau of Indian Affairs, Assistant Secretary of Indian Affairs, Anna Deer, said so by administrative recognition. Thank you. Thank you, counsel. Mr. Williams, you have some rebuttal time remaining. Thank you. First, to address the last points that were made, I think the examples it demonstrates, the argument that you just heard, is why we have Part 83 recognition. Those are all good arguments in a petition to seek recognition under Part 83, and that is what Judge Carlton ruled 25 years ago, after hearing all these same arguments about all these same documents, and said, one, you haven't proven that you're a recognized tribe under any alternative, and two, you have not exhausted your remedies under Part 83. And that's exactly where we are now, and until they do that, they're not entitled to the fee-to-trust benefits. The district court, the D.C. Circuit, addressed the need to comply with 83 before you get any of the benefits under the IRA. Excuse me, 25 CFR 83.2 says just that. As far as the – That's not the agency's position, though, so why shouldn't we defer to the agency on how to interpret the recognition term and what it means? How to – How to interpret the recognition requirement. There has been – there has been – first, the federal government has not argued in their brief any kind of Chevron deference for this administrative interpretation. They haven't – there's been no argument. In the plain language of the statute, and the – and as interpreted by Courtier, it makes it clear that you have to be federally recognized. And the cases that come out after – But they have to be recognized, but then there's the question of what recognized means, and they clearly have a position that this tribe is recognized, so whether it's in their brief or in a regulation, there are different levels of deference, but why wouldn't we defer to the agency's view of what recognition requires? Well, I think you could defer to the agency's decision in the Carlton case where they said they weren't recognized. And at that point, they said that they weren't recognized, and Part 83 was the only way to get recognition, and they need to exhaust their remedies. They've changed their position, but that – and that – Judge Carlton relied on that decision to – that position and granted their motion for summary judgment. And then they came up with this additional memorandum recognition after the fact. During Judge Carlton's decision, it didn't change Judge Carlton's mind. So I think that that is the binding issue. As far as the delegation, real quickly, I noticed counsel did not address 3348. The Federal Vacancies Reform Act is not only a succession statute. It's a delegation. It talks about what authorities the new officer can do, and he can only do what the prior officer had statutory authority, the only exclusive authority to do. Here, the Secretary of Interior, Jewell, was still Secretary of Interior. She should have reviewed this record of decision. Thank you, counsel. We appreciate the arguments of all three counsel in the case just argued in this amendment.
judges: Graber, Friedland, Fogel